```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------X
```

GARY LABARBERA and FRANK FINKEL, Trustees
of Local 282 International Brotherhood of Teamsters Welfare,
Pension, Annuity, Job Training and Vacation Sick Leave
Trust Funds,

                Plaintiffs,                        **REPORT AND
RECOMMENDATION**

      -against-                                  07-CV-2741 (DLI) (JMA)

JJP CONSULTING & ESTIMATING, INC.
d/b/a JJP TRUCKING & ESTIMATING, INC.

                Defendant.

```
----------------------------------------------------------------------------X
```

A P P E A R A N C E S:

Avram H. Schreiber, Esq.
40 Exchange Place, Suite 1300
New York, New York 10005
*Attorney for Plaintiffs*

**AZRACK**, United States Magistrate Judge:

      This case was referred to me by the Honorable Dora L. Irizarry, United States District Judge, for a report and recommendation on the amount of damages to be granted to Gary LaBarbera and Frank Finkel, as Trustees of Local 282 International Brotherhood of Teamsters ("Union") Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Trust Funds ("plaintiffs" or "Funds"), on a default judgment against defendant ("JJP Trucking"). After carefully reviewing the proof of damages submitted by the Funds, I find that, during the time period underlying this suit, no Union employee worked for JJP Trucking. I therefore find that JJP Trucking is not liable to the Funds and respectfully recommend that damages be denied.

1

## I. BACKGROUND

By their complaint of July 6, 2007, the Funds demand unpaid fringe benefit contributions, statutory damages, interest, attorney's fees and costs under 29 U.S.C. §§ 1132 and 1145 of the Employee Retirement Income Security Act ("ERISA"), for outstanding fringe benefit fund "contributions and/or delinquency charges" which became owing under a Collective Bargaining Agreement ("CBA") between the parties, "and as a result of work performed by individual employees" of JJP Trucking, for the week ending February 2, 2007 and the weekly periods of May 2007. (*See* Dkt. No. 1: Complaint) (After the complaint was filed, JJP Trucking submitted a remittance sheet showing no contributions due for February 2, 2007, and the Funds relinquished that part of their claim. *See* Affirmation in Support of Default Judgment ("Schreiber Affirmation") ¶ 20, appended to Dkt. No. 5: Motion for Default Judgment.)

The summons and complaint were served on JJP Trucking via the New York State Department of State in Albany on July 9, 2007, and the summons was returned executed on July 16, 2007. (*See* Dkt. No. 4: Summons Returned Executed.) On July 30, 2007, JJP Trucking failed to answer or otherwise respond to the complaint within the allowed time. On October 30, 2007, the Clerk of the Court noted JJP Trucking's default. (Dkt. No. 7: Clerk's Entry of Default.) That same day, the Funds filed a Motion for Default Judgment, to which were appended the Schreiber Affirmation and supporting Exhibits A-I. (Dkt. No. 5: Motion for Default Judgment.) On November 2, 2007, Judge Irizarry ordered the entry of a default judgment against JJP Trucking, and referred this matter to me for an inquest on damages and attorney's fees. (Electronic docket entries dated November 2, 2007.)

## II. LIABILITY

**A.    ERISA**

A defendant's default amounts to an admission of the well-pleaded allegations in the complaint pertaining to liability, which are thus deemed to be true. Fed. R. Civ. P. 8(b)(6); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997). Despite this, the court still must examine the facts established by the default to ensure that the plaintiff has stated a cause of action entitling it to the requested relief. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981), *U.S. v. Ponte*, 246 F.Supp.2d 74, 76 (D.Me. 2003).

Section 1145 of ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Section 1132 provides a cause of action through which § 1145 can be enforced. 29 U.S.C. § 1132(a)(3), (d)(1). It also provides, *inter alia*, for recovery as follows:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title . . . the court shall award the plan—
>     (A) the unpaid contributions,
>     (B) interest on the unpaid contributions,
>     (C) an amount equal to the greater of—
>         (i) interest on the unpaid contributions, or
>         (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the [unpaid contributions, and]
>     (D) reasonable attorney's fees and costs of the action . . . .

29 U.S.C.A. § 1132(g)(2).

**B.    Relationship Between the Parties**

The Funds are jointly administered, multi-employer benefit trusts within the meaning of

ERISA and provide fringe benefits to employees performing services within the trade and geographical jurisdiction of the Union. (Comp. ¶¶ 2, 4.) Plaintiffs are the trustees and fiduciaries of the Funds. (*Id.* ¶ 3.) On November 4, 2004, John J. Perno, in his capacity as President of JJP Trucking, signed the New York City Heavy Construction & Excavating Contract 2002-2006 ("the Contract") with the Union. (Ex. B.) The Contract, in force through June 30, 2006, obligated JJP Trucking to make contribution payments to the Funds, and incorporated by reference the Restated Agreement and Declaration of Trust ("Trust Agreement," Ex. G) governing the Funds. (Ex. B, § 13G.) On July 14, 2006, the Metropolitan Truckers Association ("MTA") and the Union signed the 2006-2009 Metropolitan Truckers Association Memorandum of Agreement, which incorporated the Contract by reference and was in force at all times relevant to this suit. (Ex. C.) JJP Trucking is a member of the MTA. (Ex. D.)

This background is amply demonstrated by the exhibits submitted by the Funds. I therefore find that JJP Trucking was obligated by ERISA to contribute to the Funds at the agreed rates (*see* Ex. E) for each hour a covered employee worked, since ERISA enables the Funds to enforce the terms of the MTA Agreement, as well as the Contract and Trust Agreement it incorporates.

**C.     The Remittance Sheets**

My review of Exhibit F, containing copies of JJP Trucking's weekly remittance sheets for the period of July 3, 2006 through April 30, 2007, convinces me that JJP Trucking is not liable to the Funds. These remittance sheets show that no covered employee worked for JJP Trucking during the period at issue. Without work performed by a covered employee, there is no violation of § 1145.

The remittance sheets show that only a single Union employee, Joseph Valente, worked for JJP Trucking between July and December 2006. (*See generally* Ex. G.) In those weeks, with a few

4

exceptions, Mr. Valente worked 40 hours a week. (*Id.*) During the week ending July 10, 2006, he worked no hours, and he worked less than 40 hours during a few scattered weeks. (*Id.*) Remittance sheets for the weeks of December 25, 2006 through February 26, 2007 still list Mr. Valente as an employee, but show that he worked no hours. (*Id.*) JJP Trucking submitted remittance sheets from the end of February 2007 through the end of April 2007, all indicating "N/A" ("not applicable") in the column for the names of covered employees, and indicating no hours worked.

I deem JJP Trucking by its default to have admitted the Funds' allegation that no remittance sheets were submitted after this, during the weeks of May 2007. However, the remittance sheets as a whole convincingly show that Mr. Valente did not actually work any hours for JJP Trucking in May 2007. This unavoidable factual inference stems from the remittance sheets for the prior four months, which report Mr. Valente as working no hours, and the fact that JJP Trucking stopped listing Mr. Valente as an employee for the two months immediately preceding May 2007. The Funds present no evidence in their papers to contradict this inference.

**D.      The Funds' Theory of Recovery under the Trust Agreement**

Perhaps recognizing that Mr. Valente did not actually work any hours in the period underlying this suit, the Funds articulate a theory of recovery in ¶¶ 21-28 of the Schreiber Affirmation that depends upon a mechanism which I will call the "Calculations Clause," set forth in Article IX § 1(e) of the Trust Agreement. (*See* Dkt. No. 9, providing a complete copy of the Trust Agreement, which was submitted without one relevant page as Ex. G to Dkt. No. 5.) This mechanism allows the Funds to estimate the hours worked by an employee "[i]n the event the Employer fails to submit the required [remittance] reports and/or pertinent books and records for audit within twenty (20) days after written demand[.]" (*Id.*) In such a case, the Calculations Clause

5

allows the Funds to "compute the sum due for any month by adding 10 percent to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) reports submitted by the Employer." (*Id.*) The hours calculated by this method are multiplied by the hourly contribution rate, and the resulting amount becomes "binding on the Employer and shall be deemed the amount due from the Employer for the purpose of any legal proceeding." (*Id.*)

I reject the notion that the Calculations Clause applies to the four weeks of May 2007. The Funds do not claim that they made a written request for an audit of JJP Trucking's books for May 2007, and nothing in their many exhibits supports such a claim. In the absence of a rejected or ignored written request for an audit, the Calculations Clause is not triggered and does not apply.

In *La Barbera v. J.D. Collyer Equipment Corp.*, 337 F.3d 132 (2d Cir. 2003), the Second Circuit discussed a materially-identical Calculations Clause, in an ERISA case involving the same plaintiffs. At issue in *J.D. Collyer* was a resolution adopted by the Funds ("the 100% owner rule") which required employers whose sole covered employee was the business owner or a spouse to contribute 40 hours per week to the Funds for any month in which that employee worked at least one hour, regardless of how many hours the employee actually worked. *J.D. Collyer*, 337 F.3d at 135. The Court held that this rule was beyond the power of the Funds because it broke the link between contributions and hours of actual work. *Id.* at 138. The Court contrasted the unacceptable 100% owner rule with the Calculations Clause, which it approvingly characterized as being "tailored to ensure employer compliance with the contributions-per-hour-worked rules under the collective bargaining agreements" and as a "remedial provision" that "substitutes good-faith estimates of the truth for false reports or . . . when no reports are available." *Id.* The Court pointed out that the crucial difference between the 100% owner rule and the Calculations Clause was that the

Calculations Clause "requires a showing of false or non-existent records for a particular period to trigger its application." *Id.* By contrast, the Court disapprovingly noted that under the 100% owner rule, "[t]he truth simply does not matter." *Id.*

Here, the Funds seek to employ the Calculations Clause in a manner that would achieve the same end that led the Court to reject the 100% owner rule. Instead of using the Calculations Clause as a remedy against a recalcitrant employer, the Funds seek to manufacture outstanding contributions despite a set of remittance sheets showing that no hours were worked. This use of the Calculation Clause inappropriately attempts to accomplish exactly what the Second Circuit held could not be done in *J.D. Collyer*; that is, disconnecting the amount of contributions from the number of hours worked, without regard to the truth. The purpose of ERISA is to enable benefit plans to acquire what is rightfully theirs, not to punish employers for their failure to remit blank forms when the benefit plan is not owed contributions. *See Chicago District Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264 (7th Cir. 2003) (holding that benefit funds, as third-party beneficiaries to collective bargaining agreements, are entitled to benefits "but not to punctilious compliance with matters of form.").

### III. CONCLUSION

Based on the above, I find that no Union employee worked for JJP Trucking during May 2007 and that JJP Trucking is therefore not liable to the Funds. For this reason, I respectfully recommend that the Funds be denied recovery.

7

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

SO ORDERED.

Dated: April 23, 2008
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE

Copy also sent to:
J.J.P. Trucking and Estimating
44-35 Purvis Street
Long Island City, NY 11101